UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 06/03/2016

EFRAIN EUGENIO VASQUEZ, JOSE A. PENA, GUSTAVO ROMERO VALLE, FRANKLIN SAMORA, MARIANO NICOLAS HERNANDEZ, DANISLAO SANTOS, RODOLFO NAYOTL, and JAVIER GALVEZ VIVAR,

　　　　　　　　　　Plaintiffs,

　　　v.

TGD GROUP, INC. d/b/a BOTTEGA RESTAURANT and DRITON MILA,

　　　　　　　　　　Defendants.

No. 14-CV-7862 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiffs Efrain Eugenio Vasquez, Jose A. Pena, Gustavo Romero Valle, and Franklin Samora brought this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, New York Labor Law ("NYLL"), and New York's Wage Theft Prevention Act ("NYWTPA") to recover allegedly unpaid wages. Plaintiffs Mariano Nicolas Hernandez, Danislao Santos, Rodolfo Nayotl, and Javier Galvez Vivar subsequently joined the action. On January 27, 2016, the parties jointly moved for judicial approval of a settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The same day, Plaintiffs moved for attorneys' fees and costs. For the reasons stated below, the Court grants both motions, approving the settlement and awarding Plaintiffs' counsel $68,282.50 in attorneys' fees and $997 in costs.

## BACKGROUND

On September 29, 2014, Plaintiffs Vasquez, Pena, Valle, and Samora initiated this action against Defendants TGD Group, Inc., which does business as Bottega Restaurant, and Driton Mila, its owner. Dkt. 1.[1] The Complaint alleges that Defendants failed to pay Plaintiffs sufficient wages and overtime under the FLSA, NYLL, and NYWTPA. Compl. ¶¶ 1–2.

On January 20, 2016—less than three weeks before trial was scheduled to begin—the parties informed the Court that they had reached a settlement. *See* Dkt. 30. The settlement negotiation process appears to have been arduous. The parties appeared for two settlement conferences before Magistrate Judge Fox on May 6, 2015 and June 16, 2015 and a mediation session on October 28, 2015. *See* Dkt. 32 ("J. Mot.") at 7. They continued to negotiate after these meetings and were ultimately able to resolve all issues in this case. The parties represent that "[t]he settlement was reached as a result of repeated arm's length negotiations over the course of many months." *Id.*

The Settlement Agreement and Release ("Agreement") requires Defendants to pay Plaintiffs $148,500 "in addition to attorneys' fees and costs in an amount to be determined by the court." Dkt. 32, Ex. 1 ("Agmt.") at 2. The $148,500 settlement amount will be distributed to Plaintiffs as follows:

- Vasquez: $22,500
- Pena: $28,500
- Valle: $4,500
- Samora: $20,000
- Hernandez: $14,000
- Santos: $5,500
- Nayotl: $22,500
- Vivar: $31,000

---

[1] The four other plaintiffs joined this action on October 9, 2014 (Hernandez), November 24, 2014 (Santos), March 17, 2015 (Nayotl), and April 9, 2015 (Vivar). Dkt. 4, 9, 12 & 17.

2

*Id.* at 3. The Agreement also includes a "Release" provision by which Plaintiffs agree that they "irrevocably and unconditionally waive[], release[] and forever discharge[] defendants" from liability "arising out of or related to those matters that are the subject of" this lawsuit. *Id.* at 3–4.

The parties argue in their joint motion "that the settlement is a fair and reasonable resolution of a bona fide dispute reached as a result of contested litigation from pleadings through trial preparation." J. Mot. at 2. The joint motion describes how the parties evaluated each Plaintiff's claims and the compromises reached in the Agreement. *See id.* at 3–6. The parties contend that these compromises reflect "that there were valid factual disputes concerning the periods of employment, hours worked and the wages paid, and [that] some of [D]efendants' documents contradicted [P]laintiffs' recollections." *Id.* at 6.

## DISCUSSION

### I. Settlement

"[S]tipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. "[T]he parties must satisfy the Court that their agreement is 'fair and reasonable.'" *Santos v. Yellowstone Props., Inc.*, No. 15-CV-3986 (PAE), 2016 WL 2757427, at *2 (S.D.N.Y. May 10, 2016) (quoting *Velasquez v. SAFI-G, Inc.*, ___ F. Supp. 3d ___, 2015 WL 5915843, at *1 (S.D.N.Y. 2015)). To evaluate whether a proposed settlement meets this threshold, the Court should consider:

> the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

3

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. Am. Cancer Soc.*, No. 10-CV-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)). The Court should also consider factors that "weigh against" concluding a settlement is fair and reasonable, such as:

> (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic location"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace."

*Id.* at 336 (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1244 (M.D. Fla. 2010)).

The Agreement here encompasses a fair and reasonable settlement. First, Plaintiffs will receive a "substantial portion" of the total possible amount recoverable if they were successful at trial. *Santos*, 2016 WL 2757427, at *2. For example, Vasquez will receive $22,500 for a claim believed to be worth at most $25,000. *See* J. Mot. at 3. In other words, Vasquez will receive at least 90% of his total possible recovery. Pena (95%), Valle (78%), Samora (83%), Hernandez (88%), and Nayotl (94%) will receive similarly high portions of their possible recoveries at trial. *See id.* at 3–5.[2] In addition, Vivar will receive an award worth 39% to 155% of his claim, "depending on how many hours per week the trier of fact determined him to have worked." *Id.* at 6.[3] The parties agree that "this is a very favorable settlement for [Vivar]" in light of the factual dispute regarding the number of hours he worked per week. Finally, although it is unclear how

---

[2] Pena will receive $28,500 for a claim worth at most $30,000. *See* J. Mot. at 3. Valle will receive $4,500 for a claim worth at most $5,760. *See id.* at 4. Samora will receive $20,000 for a claim worth at most $24,000. *See id.* Hernandez will receive $14,000 for a claim worth at most $16,000. *See id.* at 5. Nayotl will receive $22,500 for a claim worth at most $24,000. *See id.*

[3] Vivar will receive $31,000 for a claim the parties believe is worth somewhere between $20,000 to $80,000. *See* J. Mot. at 6.

4

much Santos' claim could be worth at trial—and it is therefore also unclear what portion of that possible recovery his $5,500 settlement represents—the parties agree he "worked only a few months" during the summer of 2013, suggesting his claim is not as valuable as most of the other Plaintiffs. *Id.* at 5.

Second, the Agreement will allow the parties "to avoid anticipated burdens and expenses" in that they will not have to bring this case to trial. *Medley*, 2010 WL 3000028, at *1. As the parties settled shortly before their pretrial submissions were due to the Court, the Agreement also obviates the need for the parties to draft these submissions along with any motions *in limine*.

Third, all the parties faced litigation risks at trial. The parties "vigorously disputed the number of hours worked and whether an overtime premium was in fact paid." J. Mot. at 2. Plaintiffs also "recognized that there were valid factual disputes concerning the periods of employment" and that "some of [D]efendants' documents contradicted [P]laintiffs' recollections." *Id.* at 6. These factual disputes, were they resolved at trial, would have directly affected the value of Plaintiffs' claims.

The fourth and fifth factors—whether the settlement is the product of an arm's-length bargaining process and the possibility of fraud or collusion—also support the conclusion that the Agreement is fair and reasonable. All parties were represented by counsel, who engaged in two settlement conferences with Magistrate Judge Fox, one mediation session with an outside mediator, and "countless meetings and phone calls" amongst themselves. *Id.* at 7. This history leaves little doubt that counsel for the parties negotiated at arm's length and that the possibility of fraud or collusion is minimal. *See Hernandez v. Anjost Corp.*, No. 11-CV-1531 (AT), 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of

5

due process.'" (quoting *Johnson v. Brennan*, 10-CV-4712 (CM), 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011))).

Finally, none of the factors that typically "weigh against" approving a settlement are present here. *Wolinsky*, 900 F. Supp. 2d at 336. First, nothing in the record suggests there are other employees similarly situated to Plaintiffs, and this is not a collective action. *See Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112 (PAE), 2015 WL 7736551, at *2 (S.D.N.Y. Nov. 30, 2015) (fact that "only the named plaintiffs would be affected by dismissal" supported approving settlement). Second, the likelihood that Plaintiffs' circumstances will recur is minimal because Plaintiffs agree not to seek employment from Defendants in the future. *See* Agmt. at 8. Third, the Court is not aware of any other FLSA actions brought against Defendants. Fourth, this case does not present any novel factual or legal issues.

Having considered the totality of the circumstances, the Court thus concludes that the Agreement presents a fair and reasonable settlement of this action.

## II. Attorneys' Fees and Costs

In FLSA actions, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The NYLL also entitles a prevailing plaintiff to recover reasonable attorneys' fees and costs. *See* NYLL §§ 198(1-a), 663(1). Plaintiffs here seek to recover $77,993.80 in such fees and costs. *See* Pls.' Fees Mem. at 8. Defendants do not dispute that Plaintiffs are entitled to reasonable fees and costs, but argue the requested award should be reduced to $31,198. *See* Defs.' Fees Mem. at 8. The Court concludes Plaintiffs are entitled to recover $68,352.50 in attorneys' fees and $997 in costs, for a total award to Plaintiffs' counsel of $69,349.50.

### A. Attorneys' Fees

"A court determining the portion of a FLSA settlement reasonably allocated to attorneys' fees may use either a 'lodestar' method or a 'percentage of the fund.'" *Lopez v. Ploy Dee, Inc.*, No. 15-CV-647 (AJN), 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 21, 2016) (quoting *Thornhill v. CVS Pharmacy, Inc.*, No. 13-CV-5507 (JMF), 2014 WL 1100135, at *2 & n.1 (S.D.N.Y. Mar. 20, 2014)). In determining a reasonable award of attorneys' fees, a court should also consider "traditional criteria" such as "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (internal quotations omitted).

The lodestar amount is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). It "creates a 'presumptively reasonable fee.'" *Id.* (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).

A reasonable hourly rate is one that "a paying client would be willing to pay" while "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate effectively." *Arbor Hill*, 552 F.3d at 190. The rate should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) (internal quotations and citations omitted). Lead attorneys in this district typically charge between $300 and $400 per hour for wage-and-hour cases. *See Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13-CV-6667 (PAE), 2015 WL 5122530, at *3 (S.D.N.Y. Aug. 31, 2015); *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-CV-6094 (PAE), 2014 WL 4670870, at *9 (S.D.N.Y. Sept. 19, 2014) (collecting cases).

7

For paralegals, "courts in this Circuit have generally found $75 to be reasonable." *Cuevas v. Ruby Enters. of N.Y., Inc.*, No. 10-CV-5257 (JS), 2013 WL 3057715, at *3 (E.D.N.Y. June 17, 2013).

Plaintiffs' counsel seeks compensation at the high end of, if not above, these rates. Peter H. Cooper, of Cilenti & Cooper, PLLC, seeks $400 per hour as Plaintiffs' "principal attorney." Pls.' Fees Mem. at 4. Plaintiffs' counsel also seeks $125 per hour for the work of a paralegal named Raoul Calleja and $75 per hour for the work of two legal assistants named Jeanette Pena and Tatiana Cevallos. *See id.* at 5. This Court recently concluded that Mr. Cooper's proposed rate of $400 is too high. *See Lazaro-Garcia v. Sengupta Food Services*, No. 15-CV-4259 (RA), 2015 WL 9162701, at *4 (S.D.N.Y. Dec. 15, 2015) (citing *Cuevas*, 2013 WL 3057715, at *2). This Court also recently concluded that a reasonable rate for Mr. Cooper's law partner, Giustino Cilenti, is $350 per hour and that a reasonable rate for paralegal work at Cilenti & Cooper, PLLC is $75 per hour. *See Santos v. El Tepeyac Butcher Shop Inc.*, No. 15-CV-814 (RA), 2015 WL 9077172, at *2 (S.D.N.Y. Dec. 15, 2015). Although Plaintiffs' counsel attempt to distinguish *Lazaro-Garcia* and *Santos*, the Court ultimately sees no reason why Mr. Cooper should earn more than his partner nor why paralegal work in this case should be compensated at a higher rate than is the norm and was previously approved.[4] The Court therefore concludes that a reasonable hourly rate for Mr. Cooper is $350 per hour and that a reasonable hourly rate for Mr. Calleja, Ms. Pena, and Ms. Cevallos is $75 per hour.

With regard to the number of hours Plaintiffs' counsel worked on this case, Plaintiffs' counsel submitted itemized time records supporting their contention that Mr. Cooper worked 185.2 hours, Mr. Calleja worked 13.3 hours, and Ms. Pena and Ms. Cevallos worked a combined 12.6

---

[4] Plaintiffs' counsel argues that this case is distinguishable from *Santos* because it is more complicated and settled closer to trial. *See* Pls.' Fees Mem. at 6. Those issues may be relevant to the number of hours spent working on this case as compared to *Santos*. They do not, however, speak to Plaintiffs' counsel's "skill, experience, and reputation," which is the relevant inquiry in determining a reasonable hourly rate. *Luciano*, 109 F.3d at 115.

8

hours. *See* Cooper Decl. Ex. C. Mr. Cooper also seeks compensation for an additional 4.5 hours of work on the reply brief for Plaintiffs' instant motion for attorneys' fees. *See* Pls.' Fees Reply Mem. at 7. He thus seeks compensation for 189.7 total hours.

With the minor exception of 0.2 hours of Mr. Cooper's time, the Court concludes the hours spent by Plaintiffs' counsel on this case are reasonable. Another court in this district recently concluded it was reasonable for plaintiffs' counsel in a wage-and-hour case to spend 203.4 hours—181.2 of which were expended by attorneys and 22.2 of which were expended by paralegals—working on a case when "plaintiffs' counsel expended significant time in preparation for, and in participation in, mediation and follow-on efforts to finalize the settlement reached." *Santos v. Yellowstone Props.*, 2016 WL 2757427, at *4. Similarly here, the parties' protracted settlement negotiations—along with the number of individual plaintiffs who joined this action—made it reasonable to spend more hours working on this case "than might be expected of an ordinary FLSA case." *Id.* The Court nonetheless must reduce Mr. Cooper's hours by 0.2 for the time he spent to "file [the] consent to sue on behalf of Mr. Nayotl." Cooper Decl. Ex. C at 4 (3/17/15 entry). *See Santos v. El Tepeyac*, 2015 WL 9077172, at *3 (reducing Mr. Cilenti's hours for "repeatedly bill[ing] his clients for administrative tasks such as electronically filing documents, which a paralegal could have handled"). As this was a purely administrative task, counsel should be compensated at the paralegal rate of $75 per hour for this work. Mr. Cooper therefore reasonably spent 189.5 hours on this case at the rate of $350 per hour and 0.2 hours at the rate of $75 per hour.

Plaintiffs' counsel's lodestar amount is therefore $68,282.50, based on 189.5 hours worked by Mr. Cooper at $350 per hour and 26.1 hours worked by Mr. Cooper, Mr. Calleja, Ms. Pena, and Ms. Cevallos combined at $75 per hour. Because the Agreement provides that Plaintiffs' $148,500 settlement is "in addition to attorneys' fees and costs," Agreement at 2, the total value of the

9

settlement to Plaintiffs and their counsel applying the lodestar amount (but before costs) is $216,782.50. The attorneys' fees represent 31.5% of this total, which is within the range that courts in this district typically find is reasonable. *See, e.g., Meza v. 317 Amsterdam Corp.*, No. 14-CV-9007 (VSB), 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases."). For this reason, and having considered the additional factors described in *Goldberger*, the Court concludes Plaintiffs' reasonable attorneys' fees are $68,282.50, which is the loadstar amount.

**B.     Costs**

Plaintiffs' counsel also seeks reimbursement for $997 in costs for serving Defendants and hiring a court reporter for a deposition. *See* Cooper Decl. Ex. C at 11–12 (invoices). Defendants do not dispute that Plaintiffs' counsel are entitled to recover these costs. The Court accordingly awards Plaintiffs' counsel $997 in costs for this action.

## CONCLUSION

The Court approves the parties' FLSA settlement and grants Plaintiffs' motion for attorneys' fees. In addition to the $148,500 to be distributed to Plaintiffs pursuant to the terms of the Settlement Agreement and Release, Plaintiffs' counsel shall recover $68,282.50 in attorneys' fees and $997 in costs (together $69,279.50), for a total judgment of $217,779.50. This action is hereby dismissed with prejudice, and the Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated:   June 3, 2016
         New York, New York

_____
Ronnie Abrams
United States District Judge